LAND, J.
This is a suit to recover an alleged balance due on a note for $5,666.66, of date February 20, 1907, due February 28, 1910, signed by defendant and payable to the order of Mrs. S. A. Wright, S. A. Wright, tutrix, W. A. Wright, and J. W. Wright, with interest at the rate of 8 per cent, per annum from date until paid in full.
The note was paraphed by a notary public to identify it with an act of sale and mortgage of the same date, containing the clause of 10 per cent, attorney fees in ease of suit.
The note was indorsed as follows:
“If the title of the timber fails of which this note is a part of the purchase price, then this note is subject to a credit or diminution to that amount. The credit being at the same rate as the sale as provided in the deeds of record.
“[Signed] S. A. Wright.
“[Signed] S. A. Wright, Tutrix.
“[Signed] W. A. Wright.”
The note was also indorsed as follows:
“Nov. 24, 1909.
“By return timber on N. E. % of S. W. sec. 24, undivided half interest in N. W. Vi, sec. 11, and S. E. % of N. E. %, sec. 13, Tp. 10 N., R. W., containing 160 acres at $1600.00.
“Nov. 27, 1909.
“By sight draft White Sulphur Lbr. Co., on Texarkana National Bank $1322.62.
“[Signed] S. A. Wright.
“[Signed] S. A. Wright, Tutrix.
“[Signed] W. A. Wright.”
On the trial it was admitted that the plaintiff held the note in pledge and as collateral security for indebtedness due by the Wrights.
The main defense was that, under the terms of the contract of sale and mortgage between the Wrights and the defendant, the latter had the right to have the principal of the note sued on diminished, at the rate of. $10 per acre, should the title to any of the lands described in the deed fail, and that as a matter of fact the title to 300 acres of timber land sold, in .addition to the tracts described in the indorsement on the note, had failed, and that the defendant was therefore entitled to an additional deduction of $3,000 on the note sued on.
The case was tried, and there was judgment in favor of the plaintiff for the face of the note, with interest from date thereof, less credits indorsed thereon, and also for 10 per cent, attorney fees and costs. Defendant has appealed.
On February 28, 1907, the Wrights sold to the defendant company all the merchantable pine timber on a number of tracts of land, described by sectional subdivisions, and totaling 2,600 acres. The price was $26,000 (“that is, $10 for each acre of pine timber” conveyed), payable as follows: $9,000 cash, and the balance in tnree equal annual, installments of *285 $5,666.66 each, represented by notes, bearing 8 per cent, interest from date until paid. It was stipulated that none of the timber con-, veyed should be cut until all the price of the same should be paid in full. The act also stipulated the payment of 10 per cent, attorney fees in case it should become necessary to resort to legal proceedings for the recovery of the amount of said notes or any part thereof.
In addition to the general warranty clause, the deed of sale contains the following stipulations :
“The vendors herein specifically warrant the vendee herein against any damage that may be caused by (to?) it by suit for eviction of any of the property conveyed, provided said suit shall have finally terminated by judgment against the vendee herein.”
“It is further understood and agreed, and is a part of this contract, that, should the_ title to any of the property herein conveyed fail before the last and final payment of the purchase price herein, the purchase price of that part, the title to which has failed, shall be deducted from the last and final payment herein, and the vendors herein further bind and obligate themselves, their heirs and assigns to remove the clouds that may be upon the title to any of the property herein conveyed.”
The defendant in its answer avers that the title to five tracts of land embraced in said sale has failed.
[1] 1. The first tract is the S. E. % of section 16, township 6 north, range 2 west. Said section was appropriated by Congress for the use of public schools within the township. The objection of defendant to the title of Mrs. S. A. Wright et al. to the S. E. % of the section is that the records do not show the sale of this quarter by the parish treasurer according to law. The abstract of title furnished by the defendant shows a certificate from the Auditor of Public Accounts of the state of Louisiana that township ledger No. 1, folio 417, in his office, contains entries of the sale on June 23, 1860, of the N. E. % of section 16 to Peter Behan, and of the sale of the S. E. % of the same section to Thomas Milling for $204, one-tenth cash and nine notes. The same abstract shows sale of said S. E. % by Milling to Scott in 1873; by Scott to Kelley in 1886; by Kelley to Scott in 1886; and estate of Scott by tax sale to J. D. Wright in 1897. J. D. Wright was the author of Mrs. S. A. Wright et al.
[3] It was admitted on the trial that the courthouse and records of the parish of Winn were destroyed by fire between 1875 and 1878, and again in 1886. It may be fairly presumed that the records of 1860 relating to sales of section 16 in the parish of Winn have been destroyed. As far as the record shows, the entries in the ledger in the office of the State Auditor is the only evidence of such sales that can be procured after the lapse of more than half a century. Under Act No. 119 of 1855, the Auditor of Public Accounts had the sole superintendence and direction under the authority of the United States, of the public school lands and of their location and relocation. The same statute made it the duty of the Auditor to keep an account, showing separately the whole amount of money received into the Treasury from all sources in each fiscal year, and the amount received from each parish and from each source of revenue in each parish. Id. § 4, par. 6. The Auditor was further required to keep an account of every separate fund in the Treasury authorized by law, and to keep an account under appropriate heads of all money which may have accrued for specific purposes. Id. § 5, par. 6. It was provided by Act No. 321 of 1855 that all moneys received into the said Treasury from the sale of any sixteenth section should be placed to the credit of the township and should bear interest at the rate of 6 per cent, per annum. Id. §§ 34, 36. The Auditor was bound to keep an account of the moneys so received and the interest accruing thereon. It is evident, that the “township ledger” referred to in the certificate of Auditor Capdevielle is an official record, kept pursuant to law, for the purpose *287 of showing the amount of money paid into the State Treasury from sales of the sixteenth section in the various townships of the state. The account so kept makes full proof that the proceeds of the sale of the quarter section in dispute was paid into the State Treasury for account of the proper township.
The receipt of the price creates the presumption that the said quarter section was sold according to law.
2. Defendant abandons its objection to the title to the S. E. y of the N. E. % of section 20, township 10 north, range 2 west.
[2] 3. The title of the Wrights to the N. E. y of the N. E. y of section. 24, township 10 north, range 2 west, was objected to on the ground of an outstanding title in Thomas D. Milling and on the further ground of the sale by defendant of the same quarter section to the Grant Timber & Manufacturing Company on March 11, 1910.
The abstract shows that the United States patented this tract to William Jordan in April, 1892, and that Jordan sold to J. D. Wright in 1895. This appears to-be a straight title from the government to the Wrights. The alleged outstanding title in Milling is necessarily inferior to the title derived from the government. We cannot perceive how the alleged sale of the property by the defendant can affect the question of title.
4. Defendant objects to the title of the Wrights to the W. % of the N. E. y of the N. E. y of section 29, township 10 north, range 2 west. This tract was entered by Moses Clark and a United States patent issued to him in 1860. The patent was not recorded in the parish of Winn until December 30, 1907. The records show no sale of this land by Clark. The tract was sold at tax sale in 1881 under an assessment against J. N. Tison and was purchased by M. M. Melton. The tax deed was destroyed by fire Dut was reinstated by a judgment of date September 30, 1890. The Wrights derived title from M. M. Melton, Jr., who acquired title by a partition among the heirs óf M. M. Melton, Sr. Article 210 of the Constitution of 1879 provided in part as follows:
“All deeds of sale made, or that may be made, by collectors of taxes, shall be received by courts in evidence as prima facie valid sales.”
The only alleged defect in the tax sale urged in brief of defendant’s counsel is that the title was in Clark and not in Tison. This alleged defect was cured by the prescription of three years under article 233 of the Constitution of 1898. There is nothing to show possession in Clark or Tison at any time.
[4] 5. Defendant objects to the title of the Wrights to the S. E. y of S. W. y of section 10, township 10 north, range 1 west, on the ground of an outstanding title in E. C. Drew and his assigns. This tract was entered, date not stated, by Mathew Devore. By private act recorded in 1894, D. T. Devore sold to J. G. Gullege the S. % of ¡3. W. y of section 10, township 10 north, range 1 west. Gullege, by the same description, sold to Gresham in 1896. In June, 1899, the tract, by same description, was purchased at tax sale by J. D. Wright.
[5] It appears from Auditor’s deed to E. O. Drew, of date June 22, 1904, that the S. E. y of the S. W. y, of section 10, township 10 north, range 1 west, was adjudicated to the state of Louisiana on April 3, 1886, “as property unknown Mathew Devore entry,” by the State Tax Collector, parish of Winn, for unpaid taxes due the state of Louisiana for the years 1882 to 1885. It thus appears that the adjudication to the state in 1886 was the first sale, after the entry by Devore, of the S. E. y of the S. W. y of section 10, township 10 north, range 1 west. The transfer under which the Wrights claim, beginning in 1894, conveys the S. % of the S. W. y of the same section. The abstract does not show under what kind of assessment the *289 tax sale of 1899 was made. The tax sale of 1SS6 to the state precluded the assessment of the property for taxes for the year 1898.
On the ease as presented, we are bound to conclude that the Wrights acquired no title to this tract of 40 acres.
[6] The defense of failure of consideration because the 300 acres had but little pine timber thereon is without merit. The vendors did not warrant the quantity of pine timber on the lands conveyed. The defendant had full opportunity to inspect the timber on the tracts, and the evidence shows that an inspection thereof was made by a person presumably in its employ.
[7] The objection to the allowance of attorney fees is also without merit. Plaintiff, as pledgee, had the right to sue on the note and consequently to recover the attorney fees stipulated in case of suit on any of the notes.
The contention of defendant that the credit of $1,600 indorsed on the note, on account of the failure of title to certain lands, should be deducted from the principal is well founded. The same may be said of the additional allowance of $400 for the failure of title to the S. E. % of the S. W. % of section 10.
These deductions are not payments but returns of the purchase price as stipulated in the contract.
It is therefore ordered that the judgment below be amended and recast so as to read as follows, to wit:
It is ordered, adjudged and decreed that the plaintiff, the Winn Parish Bank, do have and recover of the defendant, the White Sulphur Lumber Company, Limited, the sum of $3,666.66, with 8 per cent, per a,nnum interest thereon from February 8, 1907, until paid, less a credit of $1,322.62 as of date November 24, 1909, and in the further sum of 10 per cent, on the amount of principal and interest due on the note sued on at date of the institution of the suit, to wit, March 20, 1911, for attorney fees. And it is further ordered that the defendant pay the costs of the district court, and that the plaintiff pay the costs of appeal.