155 So.2d 196

**Ben T. JOHNSTON**

**v.**

**A. H. NANNEY.**

No. 46541.

June 28, 1963.

Cavanaugh, Hickman, Brame & Holt, Lake Charles, for defendant-appellee and applicant.

Schober & Newstadt, Shreveport, for plaintiff-appellant and respondent.

FOURNET, Chief Justice.

This is a petitory action involving the ownership of a tract of land comprised of

120 acres located in Vernon Parish, Louisiana, now before us on a writ of certiorari granted on the application of A. H. Nanney to review the judgment of the Court of Appeal, Third Circuit, reversing the judgment of the trial court in his favor and decreeing Ben T. Johnston to be the owner of the property. See, La.App., 147 So.2d 268.

Nanney re-urges here, as he did in the Court of Appeal, a motion to dismiss the appeal on the ground that it had not been timely filed.

The record shows that Johnston's attorney, after having deposited an appeal bond in the amount of $500 in the Office of the Clerk of Court at Leesville, Louisiana, during regular business hours, secured an order from the district judge at De Ridder, Louisiana, granting Johnston a devolutive appeal, at 5:05 p. m. on the 14th of May, 1962, admittedly the last day on which such an appeal could have been taken. The Clerk's Office having been closed at 5:00 p. m. in accordance with law, the order was delivered by counsel to the Clerk of Court at his residence at 5:45 p. m. on the same day, and according to the affidavit of the Clerk, "* * * which motion and order was kept by him at his home, at the request of Mr. Broyles (then attorney for Johnston), until the next morning, May 15, 1962, when he opened his office for work on that date, he endorsed said motion and order as having been filed on May 14, 1962, at 5:45 o'clock P.M., but that said motion

and order was not actually filed in the Clerk's Office until May 15, 1962, when his office was opened for business on that date."

From the foregoing, it is not clear whether the order was filed in the Clerk's Office on the 15th of May and then and there by the Clerk endorsed with the notation "Filed May 14, 1962, 5:45 o'clock P.M." in accordance with the instruction of Johnston's counsel, as the affidavit seems to imply, or whether he accepted it and marked it filed at the time it was presented to him, as stated by the Court of Appeal, and filed in the record in the Clerk's Office the following day. As appeals are favored in law, we have concluded to resolve this matter in favor of the appellant.

The undisputed facts disclose that the subject property was acquired by Henderson Land, Timber and Investment Company, Inc. (hereinafter referred to as Henderson Land) in 1923 and it was adjudicated to the State on September 5, 1931 for the unpaid taxes due for the year 1930. The property was assessed for the year 1931 and was again adjudicated to the State on December 17, 1932, for the unpaid taxes of 1931. The amount of the adjudication, including costs, for the year of 1930 amounted to $24.10, for the year of 1931, it was $24.95. On December 31, 1938, the Register of the State Land Office issued a certificate of redemption to Henderson Land under Act 47 of 1938 upon the payment of the taxes for 1931 by Hugh S. Redding and the land was accordingly

returned to the tax rolls for the following year, 1939, in the name of Henderson Land. On May 4, 1940, it was adjudicated to Nanney for the unpaid taxes of 1939, who continued to pay the yearly taxes thereon and, on January 10, 1949, instituted a monition proceeding to quiet title to this property. Although Henderson Land had been adjudged a bankrupt in November, 1932, and the subject property was omitted from the schedule of the bankruptcy proceedings which had been closed in December, 1933, they were re-opened on May 26, 1949, to conduct a private sale of the land involved to Johnston, all without notice to the defendant who was not a creditor. Previous to that, however, Henderson Land had filed on February 12, 1949, an opposition to the confirmation of the tax sale to Nanney, which was followed by one filed by Johnston on June 29, 1949, two days after he had paid the taxes for 1930 and caused the property to be redeemed in the name of Henderson Land, under Sec. 53, Act 170 of 1898, now LSA–R.S. 47:2181, 47:2186. The monition proceeding remained dormant until February 5, 1960, when the case was set for trial, which occurred on April 8, 1960, and at that time, by agreement, the suit was converted into a petitory action, Johnston assuming the position of plaintiff, Nanney, that of defendant.

Johnston contends that inasmuch as title was vested in the State by virtue of the adjudication to it in 1931 for the unpaid taxes of 1930, the subsequent adjudication to the State in 1932 for the assessed taxes of 1931 was an absolute nullity under the jurisprudence of this State [1], that the attempted redemption of 1938, which was based on the payment of the 1931 taxes, and the return of the property to the tax rolls made thereunder in 1939 had no legal effect, and accordingly, the subsequent sale of the land in 1940 for the unpaid taxes of that year must fall.

On the other hand, Nanney contends [2] the 1938 redemption should be construed as a redemption of the property made to the State for the 1930 taxes, in spite of the fact that the certificate recites the redemption was granted on the basis of the payment of taxes for the year 1931, as the certificate

1. Boagni's Heirs v. Thornton, La.App., 132 So.2d 494; Thomas v. Bomer-Blanks Lumber Co., La.App., 105 So.2d 299; Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225; Johnson v. Chapman, La.App., 179 So. 466, reversed on other grounds, 190 La. 1034, 183 So. 285; Neal v. Pitre, 142 La. 737, 77 So. 582; Board of Commissioners v. Concordia Land & Timber Co., 141 La. 247, 74 So. 921; Winn Parish Bank v. White Sulphur Lumber Co., 133 La. 282, 62 So. 907.

2. Nanney also filed a plea of laches and estoppel on the ground that the State and the plaintiff as assignee of the tax debtor were estopped from questioning the validity of the 1940 tax sale as the 120 acres had been returned to the tax rolls in 1939 after the 1938 certificate had been issued, and since that time the State had collected taxes on the land.

was issued under the provisions of Act 47 of 1938, and especially since all certificates issued in conformity therewith were ratified, validated, and confirmed by Act 256 of 1940 (now LSA–R.S. 41:1326).

We recognize the jurisprudence is replete with decisions of this Court holding that when property has been adjudicated to the State under Sec. 53 of Act 170 of 1898, as amended, and not redeemed in the time and manner provided by law, the tax officials of the State are without power to assess and sell it as belonging to the former owner or any other person or entity. The question for our determination here, therefore, is what effect we must give to the certificate of redemption issued by the Register of the State Land Office in conformity with the mandatory duty imposed by Act 47 of 1938 upon the payment of taxes due for the year of adjudication

The intent and purpose of that Act was to aid the tax debtors who had lost their property during the depression in redeeming it, and by so doing, to have it returned to the tax rolls of the State and its political subdivisions so that revenue could be realized therefrom. It declares in clear and unambiguous language " * * * That from the date this Act takes effect, and up to twelve o'clock noon of the 31st day of December 1938, if the owner or any person interested personally * * * or otherwise * * * in any lots or lands bid in for and adjudicated to the State * * * for

non-payment of the 1936 taxes or the previous years' taxes * * *, as long as the title thereto is in the State, * * * has paid * * * to the Treasurer of the State * * * the amount of the actual taxes for which said lots or lands were adjudicated to the State * * *, the Register of the State Land Office * * * *shall* execute and deliver to such persons a certificate of redemption for the said lots or lands in the manner hereinafter provided, *and such certificate shall,* when registered in the office of the Clerk of Court of the Parish where said lots or lands are situated, *be held and taken as evidence of the redemption of such lots or lands in the name of the person who was assessed with the same at the time of adjudication. * * *"* Sec. 1. "On January 1st after any such certificate of redemption has been issued, *the property redeemed shall be assessed in the name of the* person, firm or *corporation* redeeming the same * * * *and the taxes assessed thereon, shall be collectible in the manner provided by law * * *."* Sec. 2. This section further provides that " * * * said Louisiana Tax Commission shall issue a certificate cancelling and annulling all taxes assessed and levied subsequent to the date of adjudication and up to and including the year in which the redemption was effected * * *." (Emphasis ours.)

As was very aptly observed by the trial judge, at the time the redemption certificate was issued the State Land Office had

a record and knew that the land had been adjudicated to the State for the unpaid taxes of 1930 and it is therefore charged with the knowledge that the second adjudication of the land to the State in 1932 was without effect, hence the only valid title the State had to these lands was the one made to it in 1931 for the unpaid taxes of 1930 and to release that claim it was only necessary to pay one year's taxes under Act 47 of 1938, and when the redemption thereof was timely made, as it was here, then all subsequent taxes, including those for 1931 were waived. It necessarily follows then that the issuance of a certificate of redemption by the State Land Office in December, 1938, served to divest the State of such claim and title to the land as it possessed at the time, and the fact that the certificate referred to the taxes which were forfeited to the State in 1931 instead of 1930, in our opinion, does not make the redemption certificate invalid.

■ Moreover, whatever infirmity may be attributed to the redemption certificate because of the aforementioned error was cured by the Legislature of 1940 when it enacted Act 256 which specifically ratified, validated, and confirmed such a certificate which became unassailable upon the expiration of the six months period provided by the Act for attacking it. We therefore conclude title of the subject property is vested in Nanney.

For the reasons assigned, the judgment of the district court is affirmed and it is further ordered that A. H. Nanney, defendant herein, be and he is hereby decreed to be the lawful owner of the following described property, situated in Vernon Parish, Louisiana:

SW¼ of SW¼, Section 6; SE¼ of NW¼ and NE¼ of SW¼, Section 7; Tp. 2 North, Range 9 West.

All costs of this proceeding, including those of this Court, are to be paid by the plaintiff, Ben T. Johnston.

155 So.2d 199