BARNETTE, Judge.
The plaintiff, Lake, Inc., brought this suit on December 1, 1966, to quiet its alleged title to Lots 15, 16, 17, 18, Block 4, Clearview Estates, Jefferson Parish, Louisiana. The petition was answered and defended by Joseph E. Brown, Raymond J. Brown and Edward V. Brown, who claimed *213 ownership of the lots in question as heirs of Mary Musso Brown, deceased. Judgment was rendered, signed and filed October 27, 1967, dismissing plaintiff’s petition with prejudice at its cost. The judgment specifically decreed that a tax sale to plaintiff’s vendor, York Realty Company, and its purported sale to plaintiff were nul-lities, and Lake was enjoined and prohibited from asserting any claim of ownership. From this judgment Lake, Inc., has appealed.
The question presented is strictly one of law and arises out of the following undisputed sequence of events.
On May 4, 1933, Mutual Investment Co., Inc., sold the lots in question to Mary Musso Brown and the deed of conveyance was duly recorded. Since the record owner of the lots on January 1, 1933, was Mutual Investment Co., Inc., the assessment for that year was made in the name of Mutual. The taxes for that year, 1933, assessed in the name of Mutual, were not paid and the lots in question, along with other property assessed in Mutual’s name, were adjudicated to the State on December 29, 1934, for nonpayment of 1933 taxes. However, subsequently the lots were carried on the assessment rolls in the name of Mrs. Mary Musso Brown and the taxes for 1934 were assessed accordingly.
The 1934 taxes assessed in the name of Mary M. Brown were not paid, and the lots were again adjudicated to the State, December 31, 1935. At this point there were two adjudications to the State of record covering the same lots for two successive years of unpaid taxes. The validity of the second adjudication is one of the questions which has been argued on appeal.
On April 24, 1937, Mrs. Brown redeemed the lots by certificate of redemption under authority of section 53 of Act 170 of 1898, and the act of redemption was properly filed. She paid all State and Parish tax assessments for 1934, 1935, and 1936, evidence of which was required before issuance of the certificate.
Sometime thereafter Mrs. Brown died and her heirs, named above, were recognized as such and placed in legal possession of the four lots in question.
Mutual Investment Co., Inc., made application for redemption of the lots (among other property) adjudicated in 1933, and a certificate of redemption was issued May 30, 1936.[1] Mutual failed to make the installment payments for redemption under the provisions of Acts 161 of 1934 and 47 of 1938. Pursuant to the authority of those acts, the property, including the lots in question, was again advertised for tax sale as property assessed to Mutual, the delinquent tax debtor, and sold by the Sheriff of Jefferson Parish to York Realty Company, October 25, 1944.
The plaintiff, Lake, Inc., acquired from York by deed, without warranty, all of York’s right, title and interest in the lots in question along with other described property. The date of this deed was July 18, 1966. It is upon the title thus acquired by Lake that the present suit is founded.
Counsel for the Brown heirs, appellees herein, contend that the redemption by Mrs. Brown in 1937 of the lots adjudicated to the State for nonpayment of the taxes for 1934, when the lots had already been adjudicated to the State for nonpayment of the 1933 taxes, notwithstanding the specific reference to the year 1934, was a divestiture by the State of all its right, title and interest, whether the State acquired its title by the adjudication for 1933 or 1934 taxes, citing Johnston v. Nanney, 244 La. 959, 155 So.2d 196 (1963).
Counsel for Lake, appellant, argues that the adjudication in 1935 for nonpayment *214 of 1934 taxes was a nullity for the reason that the State was already vested with title by virtue of the adjudication for the 1933 taxes. From this circumstance it is argued that the purported redemption by Mrs. Brown in 1937 of the invalid adjudication was a nullity and conveyed no title to Mrs. Brown.
Neither counsel, by brief or in oral argument, made a point of the circumstance, which was clarified by the stipulation filed herein upon our request, that the State had divested itself of title acquired by the adjudication for 1933 taxes, by its redemption to Mutual in 1936 which preceded the purported redemption to Mrs. Brown in 1937. Mrs. Brown having acquired the lots by deed from Mutual in 1933, as Mutual’s vendee, became the beneficiary of Mutual’s 1936 redemption of the lots in question along with other property. It appears, therefore, aside from any question of the validity of the purported redemption of 1937, Mrs. Brown was in 1937 the owner of the redeemed property.
The redemption by Mutual in 1936, which inured to the benefit of Mrs. Brown, was under the provisions of Act 161 of 1934, which act provided a special relief to delinquent tax debtors whose property had been adjudicated to the State during the “depression” years. This act provided for redemption by payment of the taxes only for the year of adjudication, and further provided a method of payment in annual installments. That act provided in part as follows:
“ * * * The Register of the State Land Office, or the governing authority of such political subdivision, shall execute and deliver to such persons a certificate of the same in the following manner, which certificate shall be held and taken as evidence of the redemption of such lot or lands in the name of the person who was assessed with the same at the time of adjudication. Such certificate shall be signed by the Register of the State Land Office, or by the Mayor, Chairman, President or corresponding official of the political subdivision involved, and also by the person, firm or corporation redeeming, and shall contain a stipulation for the payment of the said price of redemption in five equal payments, such amount to be paid in annual installments, beginning one year from date of such certificate, and due in one, two, three, four and five years from date, with interest thereon from maturity at five per cent per annum, until paid, and shall further contain a stipulation that a tax lien and mortgage, in favor of the State or the political subdivision involved shall be retained, and that the person, firm or corporation redeeming consents that default in the payment of any installment shall mature all installments remaining unpaid, that should any installment be not promptly paid at maturity, the Tax Collector of the parish or political subdivision involved shall without suit seize, advertise and sell said property in the manner provided for tax sales for the unpaid portion of such installments * * *.
“Section 2. On January 1st after any such certificate of redemption has been issued, the property redeemed shall be assessed in the name of the person, firm or corporation redeeming the same or his successor or assign, and the taxes assessed thereon shall be collectible in the manner provided by law, provided, that should any such property be sold at tax sale, a condition of such sale shall be that the purchaser shall assume the payment of all unpaid installments due under this act, otherwise the property shall be again adjudicated to the State or to the authority levying the tax in the manner provided by law, and such certificate of redemption shall ipso facto be cancelled by such adjudication.” (Emphasis added.)
The record before us on appeal does not reveal whether after January 1, 1937, the assessment was carried in the name of Mrs. Brown (Mutual’s assign) as the act requir *215 ed, or continued to be carried in the name of Mutual. The annual installments were not paid and the lots in question, along with the other property redeemed by Mutual in 1936 under the above act, were sold at tax sale by the Sheriff of Jefferson Parish to York Realty Company, October 25, 1944. If and when the lots were ever assessed in the name of York, and when the assessment to “Joseph E. Brown et als” was first made, is not disclosed by the record before us, but we find in evidence certificates showing payment of taxes in the name of “Joseph E. Brown et als” from 1949 through 1966. The Brown heirs also paid all off-site improvement assessments. It is conceded by all parties that the lots have not been physically possessed by either of them.
It is our opinion that the redemption in 1936 to Mutual which inured to the benefit of Mrs. Brown, its vendee, was a full redemption of the lots in question and a divestiture of the State of its title to the property, subject to the tax lien and mortgage which the State retained under the provisions of Act 161 of 1934 for the full payment in installments of the 1933 taxes only.
The purported redemption to Mrs. Brown in 1937 of the 1934 tax adjudication was not under the so-called depression statute but under the general redemption statute, specifically section 53 of Act 170 of 1898, as amended, which made no provision for waiver by the State of the taxes due for other years. Furthermore, the redemption to Mrs. Brown recited:
“And the said Mary M. Brown having redeemed the said above described property by paying all the taxes, interest, costs and penalties aforesaid, the said [Mary M. Brown] as [owner] is legally subrogated to all rights, liens and mortgages of the State incident to and growing out of the taxes for the years 1934 and its records in the offices required by law, without prejudice to any privileges or mortgages of the State * * * for other taxes.”
In view of the foregoing it is unnecessary for us to consider the validity of the 1934 adjudication for whatever rights, if any, Mrs. Brown acquired by the foregoing purported redemption of that adjudication were without prejudice to the State’s prior recorded tax lien and mortgage for the payment of the 1933 taxes, which at that time were not fully paid under the 1936 installment payment obligation. The decision of the Supreme Court in Johnston v. Nanney, supra, which dealt with a redemption under the “depression” statute, where the State waived all its rights for payment of taxes for years other than the specific year redeemed is not relevant to the factual situation presented here.
We do not mean to imply that the distinction between this case and Johnston v. Nan-ney, supra, is only in respect to the statute under which redemption was made. In Johnston the Supreme Court said:
“ * * * It necessarily follows then that the issuance of a certificate of redemption by the State Land Office in December, 1938, served to divest the State of such claim and title to the land as it possessed at the time, and the fact that the certificate referred to' the taxes which were forfeited to the State in 1931 instead of 1930, in our opinion, does not make the redemption certificate invalid.” 244 La. at 967, 155 So.2d at 199.
In the case before us when the State issued a redemption certificate to Mrs. Brown in 1937, it had already divested itself in 1936 of all its claim and title to the lots, except its rights under the tax lien and mortgage. These rights were expressly reserved and therefore that reservation was not affected by the purported 1937 redemption which conveyed nothing.
Mrs. Brown became reinvested with title by the 1936 redemption, but subject to the right of the State to readvertise and *216 sell the lots if the taxes for 1933, payable in installments, were not paid in accordance with the provisions of the act and the certificate of redemption. The installments having not been paid the lots were advertised for tax sale again for nonpayment of 1933 taxes and sold to York Realty Company as stated above. Mrs. Brown thereby again lost the title for failure of payment of the 1933 taxes. This tax title of York Realty Company acquired in 1944 is the tax title sought now to be confirmed and quieted by its vendee Lake in this proceeding. There is no proof whatever that there was a prior payment of the taxes for 1933 either by Mutual or Mrs. Brown, which is the only defense now available to the Brown heirs. LSA-Const. Art. 10, § 11, and LSA-R.S. 47:2228.
It should be pointed out also that the deed by which Mrs. Brown acquired the lots from Mutual, May 4, 1933, contained the following statement of tax status:
“All State and City taxes up to and including the taxes due and exigible in the year 1932 are paid as per Tax Receipt No. 2779.”
Thus Mrs. Brown had notice that the 1933 taxes had not been paid.
It is immaterial to the issue before us on this appeal to whom the lots were assessed and if and by whom taxes were paid between the years 1937 and 1949, which facts are not revealed by the record before us as we pointed out above.
The trial judge in his reasons for judgment said:
“The Court is of the opinion that the redemption by Mrs. Brown in 1937 from the State Land Office fully redeemed her four lots from the State of Louisiana notwithstanding the redemption as applied for covered the 1934 adjudication to the State. When the State retroceded and released its interest in the subject four lots to Mrs. Brown in 1937, this covered any interest the State had in the lots, including the 1933 adjudication.”
Under the principle of law set forth by the Supreme Court in Johnston v. Nanney, supra, his reasons and conclusion might find adequate support, except for the circumstance that the facts upon which his conclusion was based were not complete. The redemption of the lots in question by Mutual in 1936, while alluded to, was not fully disclosed to the trial court. It was after the case was submitted on appeal that our examination of the record revealed the importance that this redemption be clarified as to date and issuance, vel non, of a certificate of redemption. Upon our request counsel for appellant and appellee have stipulated the facts and filed in this court the certificate of redemption. We have no doubt that the learned trial judge would have arrived at a different conclusion if these facts had been fully revealed on trial below.
The tax title acquired by York Realty Company at tax sale on October 25, 1944, must therefore be confirmed.
We have carefully considered the serious impact of this conclusion on the rights of the Brown heirs. The equities of this case preponderate heavily in their favor, but unfortunately the determination of title to real property must be founded upon the provisions of law, strictly construed. To hold otherwise, even though the demands of equity might so indicate in a particular case, woud produce a chaotic condition and threaten the security of land titles generally.
We will exercise our discretion under LSA-C.C. art. 2164 and assess all costs in both courts to plaintiff-appellant.
For the foregoing reasons, the judgment dismissing plaintiff’s petition with prejudice at its cost is reversed.
It is now ordered, adjudged and decreed that the tax title by the State of Louisiana to York Realty Company of October 25, 1944, registered in Conveyance Office Book 206, folio 649 of the records of Jef *217 ferson Parish, Louisiana, insofar as it relates to the following described property:
A certain number of lots of ground situated in the Parish of Jefferson, State of Louisiana, in that part known as Clearview Estates, said lots designated by the numbers, 15, 16, 17, 18, Square 4 in Section B,
he and the same is now quieted and confirmed and, by virtue of deed of conveyance to it by York Realty Company, July 18, 1966, registered in Conveyance Office Book 640, folio 959 of the records of Jefferson Parish, Louisiana, the plaintiff, Lake, Inc., is now recognized to be the sole and only owner thereof.
Further ordered, adjudged and decreed that defendants Joseph E. Brown, Raymond J. Brown and Edward V. Brown be enjoined and prohibited from claiming or setting up any right title or interest in and to said described property or any part thereof; plaintiff-appellant to pay all costs in both courts.
Reversed and judgment rendered.

. The date of this redemption by Mutual Investment Co., Inc., and the redemption certificate were stipulated after argument of the case before this court. The agreement of stipulation and a copy of the redemption certificate were filed in the record in this court.