319 So.2d 881 (1975)
Doris C. FLECKINGER
v.
Mrs. Mae Anna Sendker Smith, wife of Leon M. SMITH, Deceased, et al.
No. 6557.
Court of Appeal of Louisiana, Fourth Circuit.
May 15, 1975.
On Rehearing October 9, 1975.
Writ Refused November 21, 1975.
*882 Ponder, Duke & Richardson, Metairie (John D. Ponder, Charles L. Duke and Lamar Richardson, Jr., Metairie), for plaintiff-appellant.
Charles E. McHale, Jr., New Orleans, for defendants-appellees.
Before SAMUEL, GULOTTA, SCHOTT, MORIAL and BEER, JJ.
SCHOTT, Judge.
This case involves title to two lots in Bridgedale Subdivision in Jefferson Parish. Plaintiff brought suit to confirm and quiet her title in the form of a land patent issued by the State of Louisiana on September 20, 1957, and registered in the Parish Conveyance Office on October 30, 1957. Defendants are the widow and heirs of Leon Smith and the assigns of Jacob Koch as to their title to the lots. They answered claiming title by virtue of a sale from Mrs. Elizabeth Freida Sissung Koch to Mr. and Mrs. Leon Smith dated July 15, 1954, and a tax redemption certificate issued by the State of Louisiana to Jacob Koch and his assigns on December 13, 1954, registered in the Conveyance Office on December 14, 1954. Defendants also filed a reconventional demand praying that plaintiff's patent be declared an absolute nullity and that she be enjoined from asserting any further interest in the property.
Both parties moved for judgment based on the pleadings, and after the submission of appropriate documents and oral argument, the trial court rendered judgment against the plaintiff cancelling her deed to the property and enjoining her from asserting any interest in the property. Plaintiff has appealed from that judgment.
The relevant facts are undisputed. In 1931 Jacob Koch acquired title to the two lots. On November 13, 1937, these lots were adjudicated to the State for nonpayment of 1936 state taxes assessed in Koch's name. On October 13, 1939, the lots were again adjudicated to the State for nonpayment of 1938 state taxes, still assessed in Koch's name. Koch died, and on July 12, 1954, a judgment of possession was rendered recognizing Mrs. Elizabeth Sissung Koch as the owner of the lots. Three days later, on July 15, 1954, Mrs. Koch sold the lots to Mr. and Mrs. Smith, the present defendants. Certificates were waived by the purchasers. On December 13, 1954, Smith effected the redemption of the property under the adjudication to the State of Louisiana for 1938 state taxes and was issued the certificate of redemption relied on by defendants.
Almost three years later, on July 17, 1957, plaintiff purchased the lots at a Sheriff's Sale conducted pursuant to *883 LSA-R.S. 47:2189 for the unpaid 1936 state taxes. On September 20, 1957, pursuant to the same statute, the State Land Office issued the patent sought by plaintiff to be confirmed in this suit.
In deciding the case for defendants the trial judge gave the following reasons:
"Plaintiff's principal contention is that the second adjudication of the property to the state in 1939 was an absolute nullity in light of the fact that the property had already been adjudicated to the state in 1937. Thus, any redemption of the latter adjudication would also be without legal effect and the defendant's claim to the property would therefore be inferior to that of the plaintiff's, which is based upon a redemption of the earlier adjudication.
"This court believes that the law governing the issues in this case is set out most clearly in the case of Johnston v. Nanney, 244 La. 959, 155 So.2d 196 (1963).
"The Court, in Nanney (supra), was concerned with two adjudications of a piece of property to the state for nonpayment of taxes and the subsequent sale of that one piece of property to two different owners. In determining which redemption was valid, the court stated:
`As was very aptly observed by the trial judge, at the time the redemption certificate was issued the State Land Office had a record and knew that the land had been adjudicated to the State for the unpaid taxes of 1930 and it is therefore charged with the knowledge that the second adjudication of the land to the State in 1932 was without effect, hence the only valid title the State had to these lands was the one made to it in 1931 for the unpaid taxes of 1930 and to release that claim it was only necessary to pay one year's taxes under Act 47 of 1938, and when the redemption thereof was timely made, as it was here, then all subsequent taxes, including those for 1931 were waived. It necessarily follows then that the issuance of a certificate of redemption by the State Land Office in December, 1938, served to divest the State of such claim and title to the land as it possessed at the time, and the fact that the certificate referred to the taxes which were forfeited to the State in 1931 instead of 1930, in our opinion, does not make the redemption certificate invalid.'
"Based on the above holding, this court finds that the defendants and plaintiffs-in-reconvention are the true owners of the land by virtue of their redemption of the property in December of 1954, some three years before the plaintiff's redemption. The Nanney decision makes it clear that the first party to redeem adjudicated property under the facts as presented in this case gains all of the state's rights to that land. Thus even where the state, through a subsequent oversight, sells the same property to a third party, this will not serve to defeat the original redeemers claim. The fact that said redemption was for the unpaid taxes owed in 1938 rather than 1936 does not, according to Nanney (supra), lessen the claim of defendants to the land."
We have concluded as did the trial judge that the cited case is controlling. There the property was adjudicated to the state in 1931 for 1930 taxes. The Supreme Court held that the redemption in 1938 for the 1931 taxes was valid and therefore a subsequent adjudication to Nanney in 1940 for the 1939 taxes assessed to and unpaid by the tax debtor conferred a valid title on Nanney. The Court held that a subsequent redemption to Johnston for the 1930 taxes was of no consequence and did not have the effect of conferring title on Johnston.
In the instant case, the property was adjudicated to the state in 1937 for 1936 taxes and again in 1939 for the 1938 state taxes. In 1954 the tax debtor's assigns, defendants, redeemed the property under the adjudication to the state for the *884 unpaid 1938 state taxes and were issued a patent pursuant to LSA-R.S. 47:2189. We have concluded that a valid title was conferred on defendants by virtue of the redemption under the adjudication for the 1938 taxes even though the 1936 taxes were still outstanding and that plaintiff did not acquire valid title when she paid the 1936 taxes and was issued a patent pursuant to the cited statute.
In reaching our conclusion we have considered whether there is such a distinction between Act 47 of 1938 under which the redemption in Johnston was effected, and LSA-R.S. 47:2224 under which the redemption in the instant case was effected which would warrant a different result in the instant case than the one in Johnston.
When these statutes are compared they are identical except that the earlier statute requires the tax debtor to pay only "the amount of the actual taxes for which said lots or lands were adjudicated to the State," while the latter statute requires that the tax debtor pay "the taxes, interests and costs" in order to effect a redemption. Thus, when Johnston redeemed the property for 1931 taxes he was required to pay only that year's taxes; and even had he applied for a redemption of the 1930 taxes also he would only have been required to pay the taxes for one year and not for all of the years intervening between 1930 and 1938 when his redemption was effected. As opposed to that situation, the tax debtor in the instant case was required to pay all taxes when he attempted to redeem the property for unpaid taxes of 1938. But in both instances the statute provided that once the redemption was issued "such certificate shall . . . be held and taken as evidence of the redemption" of the property.
The Supreme Court's language in Johnston that "at the time the redemption certificate was issued the State Land Office had a record and knew that the land had been adjudicated to the State for the unpaid taxes of 1930 and it is therefore charged with the knowledge that the second adjudication of the land to the State in 1932 was without effect," should be equally applicable to the defendants in the instant case. At the time the redemption certificate was issued the State Land office had a record and knew that the land had been adjudicated to the State for the unpaid taxes of 1936, and it is therefore charged with the knowledge that the second adjudication of the land to the State in 1938 was without effect.
The fact that the earlier statute required the payment of only one year's taxes at the time of redemption is of no consequence in the application of the quoted language from Johnston. Johnston effectively redeemed his property under the 1932 adjudication by paying that amount which the legislature then required to be paid and this had the effect of effacing the adjudication for the 1930 taxes. Similarly, the defendants should be held to have effectively redeemed their property when they paid all that was required of them to effect a redemption for the 1938 taxes and that redemption should have effaced the adjudication for the 1936 taxes.
Moreover, in the present statute there is language which has the effect of making the holding in the Johnston case part and parcel of the legislative enactment under R.S. 47:2224. In this statute the following language is found which was not a part of Act 47 of 1938:
". . . provided, however, that no such certificate of redemption shall be so issued to the person redeeming until and unless all state, parochial, district, and municipal taxes due on the property up to the date of redemption shall have first been paid; . . ."
When the defendants sought to redeem this property in 1954 they had a right to rely upon the last quoted language of the statute under which they were redeeming which places the duty upon the Register of the State Land office not to issue a *885 certificate of redemption unless all of the taxes due on the property have been paid. They applied for the redemption, paid all taxes accruing on the property from 1938 to 1954 and were issued a redemption certificate by the Register of the State Land office. It is clear that the legislative intent in including the last quoted language of the statute was to charge the State with knowledge of any and all taxes which might be due on property before a redemption certificate is issued. It follows that defendants were entitled to rely on the fact that the Register was performing his duty in obedience to the statute.
Beyond peradventure of a doubt the Register in the instant case issued the redemption certificate to defendants in violation of the law which required that all taxes, including those due in 1936, be paid. Does this strike the redemption with invalidity or nullity? The statute does not say so although the legislature could have incorporated such language in the statute had this been the intent. We are loath to read so harsh a result into the statute by implication.
We are aware of the fact that there are conflicting and important interests to be protected in this case. On the one hand, this Court should preserve the integrity of titles to real estate so that a purchaser can identify the links of the chain in his title to the extent that every tax adjudication must be cancelled, redeemed or somehow effaced by a valid cancellation or redemption applicable to the particular year for which the property was adjudicated. In this case, when the defendants redeemed the property for 1938 taxes the chain of title demonstrated that the 1936 adjudication was still of record so that some duty was upon them to dispose of that adjudication as a condition for their acquiring a valid title.
On the other hand, the law favors tax redemptions and in every case equitable considerations exist in favor of the tax debtor who attempts to redeem his property. But this is especially so in the instant case where the defendants attempted to redeem the property under an act which charged the Register of State Land office who issued the tax redemption certificate to the defendants with an absolute prohibition against him from issuing such a certificate unless all previous taxes had been paid. It would be manifestly unjust to penalize the defendants because the Register of the State Land office failed to perform his duty and to reward the plaintiff for taking advantage of that failure on the part of the Register.
Under R.S. 47:2189 it was plaintiff who initiated the procedure leading to the issuance of her patent. When she did so defendants' redemption certificate was already on the public records for three years. She should not be permitted to take advantage of the Register's dereliction in issuing that redemption certificate. The latter should be conclusively presumed valid and the Register made to pay the two years' unpaid taxes.
Having concluded that the defendants' redemption was valid it becomes necessary to consider plaintiff's contention that her patent is protected from attack by LSA-R.S. 9:5661 providing a six-year prescriptive period against such an attack.
In California Co. v. Price, 225 La. 706, 74 So.2d 1, it was said that the purpose of this prescription statute "was to stabilize titles issued by the State . . . in cases wherein the State and other interested parties failed to contest the patents within a stated time." It has been said that the intended function of the statute is that of "a statute of repose." See A. N. Yiannopoulos, Validity of Patents Conveying Navigable Water BottomsAct 62 of 1912, Price, Carter And All That, 32 La.L.Rev. 1.
We have concluded that defendants effectively redeemed their property and this was a matter of public record. To hold that a patent issued three years later *886 by the State on defendants' property would work the opposite result from stabilizing titles or providing repose. It would create turmoil. Any record owner of immovable property could have his title taken away if the State erroneously issued a patent on his property to a third party and six years elapsed thereafter. If the prescription argument of plaintiff were valid it would behoove every owner of real estate in Louisiana to check the conveyance records every six years to guard against loss of title through erroneous issuance of a patent. The absurdity of such a result disposes of the contention.
The judgment appealed from is affirmed at plaintiff's cost.
Affirmed
SAMUEL, J., dissents with written reasons.
GULOTTA, J., dissents for reasons assigned by SAMUEL, J.
SAMUEL, Judge (dissents).
To reach a conclusion in this matter we are required to determine the present status of a portion of the law relative to immovable property and title thereto, an area in which this court scrupulously must follow the jurisprudence of the Supreme Court of Louisiana. Although there is a line of Supreme Court decisions directly contrary to the holding of the majority here, the majority's conclusion is based solely on some language contained in Johnston v. Nanney, 244 La. 959, 155 So.2d 196, which they apparently feel overrules that line of previous cases. I am of the opinion that the majority misconstrues the holding in Johnston, that Johnston is an exception to, and does not overrule, the prior jurisprudence, and that the majority opinion and decree not only do not follow but are directly contrary to the present jurisprudence of the Supreme Court.
The general rule established by the jurisprudence prior to Johnston is that once the state has adjudicated immovable property to itself for unpaid taxes and that property is not redeemed, a second adjudication of the same property from the same owner to the state for taxes for a subsequent year is an absolute nullity; a purchaser from the state under such a second adjudication acquires no title to the property involved; and a redemption under that second adjudication is without effect, i. e., it does not deprive the state of the right to transfer title to a third person by virtue of the previous valid and unredeemed tax adjudication, because redemption of a null tax adjudication is itself a nullity. This rule has been stated and restated by our Supreme Court and our Courts of Appeal on innumerable occasions.[1]
In the case now before us the lots were acquired by Jacob Koch in 1931. On November 13, 1937 they were adjudicated to 13, 1939 the lots again were adjudicated to the the state for unpaid 1936 taxes assessed in Koch's name. On October 13, 1939 the lots again were adjudicated to the state, this time for unpaid 1938 taxes, the property still being assessed in the name of Koch. Koch died, and on July 12, 1954 a judgment of possession recognized his widow as owner of the lots. Three days later, on July 15, 1954, Mrs. Koch sold the lots to Mr. and Mrs. Smith. Mrs. Smith and the heirs of Mr. Smith are the present defendants.
*887 On December 13, 1954, the Smiths redeemed the property under the 1939 adjudication for 1938 taxes and obtained a certificate of redemption in the name of Koch and his assigns. Almost three years later, on July 17, 1957, plaintiff purchased the same lots, by sheriff's sale pursuant to LSA-R.S. 47:2189, under the 1937 adjudication for 1936 taxes. On September 20, 1957 the State Land Office issued a patent to plaintiff in accordance with LSA-R.S. 47:2189.
If the general rule is applied to the above facts, it is clear the redemption by the Smiths under the 1939 adjudication for 1938 taxes was without effect. Because the same property previously had been adjudicated to the state for 1936 taxes, the 1939 adjudication was an absolute nullity which conveyed nothing to the state and therefore there was nothing which could be redeemed under that 1939 adjudication.
With one important exception, the pertinent facts in Johnston are similar to the present case. In Johnston there were two adjudications from the same owner of the same property to the state for non-payment of taxes for different years, 1930 and 1931, with a redemption, in 1938, to the tax debtor under the second adjudication and a latter sale, in 1940, by the state to the third party, Nanney.
The exception referred to is that in Johnston the property was redeemed under Act 47 of 1938, a tax debtor relief statute, while the redemption in the instant case was effected under Act 170 of 1898, as amended (LSA-R.S. 47:2224). There was no tax debtor relief statute in existence when the 1954 redemption was effected by the Smiths. The differences between the two statutes were material to the conclusion in Johnston.
Act 47 of 1938 was a depression measure which afforded tax debtors the extraordinary relief of allowing them to release their property from tax adjudication for all delinquent years by the payment of only one year's taxes, those due for the year of adjudication. That statute was specific and limited in time, the relief thereof expiring at noon on December 31, 1938, an expiration occurring subsequent to the 1938 redemption in Johnston. In addition to its humanitarian purposes, it also had the effect of placing property back on the tax rolls, thereby increasing state revenues, at a time when much of the adjudicated property might not have been redeemed due to the depression.
Act 170 of 1898, as amended, under which the redemption in the present case was effected, requires for redemption payment of "all state, parochial, district, and municipal taxes due on the property up to the date of redemption". In this case such taxes were not paid by the defendants for the years 1936 and 1937.
The trial court and the majority here construe Johnston to mean essentially that, under facts such as these, a tax debtor who redeems adjudicated property receives all of the state's right to the land, i. e., a redemption under the second adjudication has the effect of effacing both adjudications and restoring title to its pre-adjudication status, merely by virtue of his redeeming the property prior to its sale by the state to a third person, and regardless of whether the redemption is under a debtor relief statute, as in Johnston, or as in the instant case, under Act 170 of 1898, as amended. This construction is not in accordance with Johnston as shown by the opinion in that case, wherein the court said:
"We recognize the jurisprudence is replete with decisions of this Court holding that when property has been adjudicated to the State under Sec. 53 of Act 170 of 1898, as amended, and not redeemed in the time and manner provided by law, the tax officials of the State are without power to assess and sell it as belonging to the former owner or any other person or entity. The question for our determination *888 here, therefore, is what effect we must give to the certificate of redemption issued by the Register of the State Land Office in conformity with the mandatory duty imposed by Act 47 of 1938 upon the payment of taxes due for the year of adjudication"[2].
This quoted statement expresses the issue the court considered in Johnston as clearly as I can conceive that issue could be expressed. In effect, the court said it recognized its prior jurisprudence relative to the established rule under Act 170 of 1898, as amended, the rule already mentioned and discussed in this dissenting opinion. The court made no attempt to change that established rule; rather, it accepted the rule. The issue presented was what effect, if any, the rule had upon a redemption effected under Act 47 of 1938, the debtor relief statute. It concluded the rule was not applicable to Act 47 of 1938 and limited its consideration and its holding to a redemption under that act. The most important consideration in Johnston appears to have been that since the payment of one year's taxes under Act 47 of 1938, if timely made, would release the tax debtor from liability for all other taxes due on the property, it was actually immaterial whether the 1930 or the 1931 taxes had been paid. In either case the amount paid would be approximately the same, and in either case the intent and purposes of the act would be fulfilled. This, of course, is not true under Act 170 of 1898, as amended.
In this connection, it is pertinent to note: (1) the established jurisprudence referred to in the quoted statement is the same as that mentioned in the preceding page of the opinion, the cases cited in support of the rule of nullity being largely the same as those cited in footnote one of this dissenting opinion; (2) although the court easily could have overruled the prior cases which established, recognized and applied the aforesaid jurisprudential rule, it did not do so and it appears clear that if the court intended to overrule such a line of established jurisprudence, it certainly would have done so without equivocation; and (3) after setting forth the facts, the contentions, and the statement hereinabove quoted, the opinion devotes itself exclusively to a consideration of Act 47 of 1938 and its purpose, concluding with a reliance on Act 256 of 1940 (LSA-R.S. 41:1326) which specifically ratified, validated and confirmed all certificates of redemption under the debtor relief statutes, including Act 47 of 1938, unless attacked within six months from July 31, 1940 (the attack in Johnston was years subsequent to 1940).
Thus, Johnston restricts itself and its holding to the debtor relief statutes, particularly Act 47 of 1938, and in no way affects the viability of the established rule relative to redemptions made under Act 170 of 1898 and its amendments. The redemption in the instant case having been made under Act 170 of 1898, as amended the general rule is applicable here.
I feel it proper to make these additional comments:
1) In its opinion the majority here states there is language in LSA-R.S. 47:2224 (Act 170 of 1898, as amended) which has the effect of making the holding in Johnston part and parcel of that statute. The language referred to is quoted and reads:
". . . provided, however, that no such certificate of redemption shall be so issued to the person redeeming until and unless all state, parochial, district, and municipal taxes due on the property up to the date of redemption shall have first been paid; . . ."
It is interesting to note that this same language was contained in the original Act 170 of 1898 and has continuously remained in the act, as amended. Thus, it was a part of the law when the cases establishing the general rule were decided.
*889 2) In the face of the fact that the Johnston case restricts itself to the debtor relief statute as an exception to the general rule, and does not change the general rule, the use of some language in Johnston, which could be transposed out of context and thus made to apply to this case, is immaterial.
3) The majority here also states: ". . . the defendants should be held to have effectively redeemed their property when they paid all that was required of them to effect a redemption for the 1938 taxes and that redemption should have effaced the adjudication for the 1936 taxes." The basic fallacy therein is that the majority bases its decision on what it deems "should be" rather than what actually is. I know of no authority supporting the statement.
For the reasons assigned, I respectfully dissent.
GULOTTA, J., dissents for reasons assigned by SAMUEL, J.
Before SAMUEL, REDMANN, LEMMON, GULOTTA, STOULIG, BOUTALL, SCHOTT, MORIAL and BEER, JJ.

ON REHEARING
We granted a rehearing in this matter and submitted it to the Court en banc pursuant to one of our internal rules because of an apparent conflict between our original opinion and the previous decision of this Court, McCarthy v. Gonnet, 163 So. 2d 840 (La.App. 4th Cir. 1964).
We note that in Pellegrini v. McCarthy, 175 So.2d 410 (La.App. 4th Cir. 1965), this Court was confronted with a sequel to McCarthy v. Gonnet when one of the defendants in the first McCarthy case launched an attack on McCarthy's title and was met with an exception of res judicata. While this Court affirmed the judgment of the trial court maintaining the exception, the following was said:
"In Johnston v. Nanney, [244 La. 959, 155 So.2d 196] supra, as in the instant case, there were two successive adjudications to the State, one for 1930, and the other for 1931 taxes. The defendant obtained a redemption certificate stating that the 1931 taxes had been paid. It was argued that, as the second adjudication was null, the redemption certificate was null. However, the Supreme Court held that the State was charged with knowledge of the prior adjudication, and that the redemption certificate was not null simply because it stated the taxes were paid for 1931 instead of 1930. Mrs. Pellegrini's redemption certificate was declared null because she redeemed for the 1932 instead of 1931 taxes; this result probably would not have been reached under Johnston v. Nanney."

From the foregoing it appears that McCarthy v. Gonnet has already been impliedly overruled. There is, as far as we can find, no other Louisiana case holding that a redemption from the state while the state still held title was null. We have not even found obiter dictum asserting such nullity. We thus know of no authority supporting any other result than that the principles of Johnston v. Nanney control, and we therefore now expressly overrule McCarthy v. Gonnet.
We also note that McCarthy v. Gonnet is, on the question of applicability of the six-year statute of repose, inconsistent with the Supreme Court's earlier Chapman-Storm Lbr. Co. v. Board of Com'rs., 196 La. 1039, 200 So. 455, which supports our original opinion on this question.
Accordingly, our original opinion[1] and decree are reinstated and the judgment of *890 the trial court is affirmed at plaintiff's cost.
Affirmed.
SAMUEL, Judge (dissenting).
On rehearing the majority reasserts its position that Johnston v. Nanney is controlling and quotes from Pellegrini v. McCarthy for the purpose of showing McCarthy v. Gonnet has been impliedly overruled, thus apparently suggesting Pellegrini as an added reason why Johnston is controlling here. The concurring opinions consider the redemption here requires a different conclusion than that reached in those cited cases which are based on tax sales to third parties. I cannot agree with these positions as they affect this court's authority to change the Supreme Court jurisprudence involving title to immovable property.
Whether or not Johnston v. Nanney is controlling has been discussed in my original dissent and that discussion need not be repeated. Insofar as Pellegrini v. McCarthy is concerned, it is not surprising that Johnston would have been controlling in McCarthy v. Gonnet if Johnston has been called to the court's attention. Johnston and McCarthy are factually indistinguishable. Both involve tax adjudications for the same years and redemptions under the same debtor relief statute, Act 47 of 1938, permitting redemption by the payment of only one year's taxes.
Insofar as may affect the conclusion here, I cannot see any logical difference between redemption and tax sale to a third party. Under the jurisprudential rule stated and restated by the Supreme Court, once the state has adjudicated immovable property to itself for unpaid taxes and that property is not redeemed, a second adjudication of the same property from the same owner to the state for taxes for a subsequent year is an absolute nullity. Since the second adjudication is an absolute nullity, and this is the ground on which the cited cases hold the subsequent sale null, I can see no difference in result between a sale under such a second adjudication and a redemption under such a second adjudication. As the second adjudication is an absolute nullity, both the sale and the redemption also are nullities.
It should be noted that the holding in Johnston is not based on a difference between a tax sale to a third party and a redemption. As the Johnston opinion does not consider or even mention such a difference, it appears to me the Johnston court must have felt the general rule was applicable to both. It follows that a change in the rule properly can be made only by the legislature or by the Supreme Court itself.
For these reasons, and for the reasons contained in my original dissent, I again respectfully dissent.
LEMMON, Judge (assigns additional concurring reasons).
I subscribe to the majority opinion, but add the following reasons for overruling McCarthy v. Gonnet, supra, which in my opinion was an unjustified extension of the rule of law that a second tax adjudication is null while the State is holding title to the property by virtue of an earlier adjudication.
Clearly, the 1939 tax sale to the State (which was holding title to the property by virtue of the 1937 tax sale) was a nullity. The critical issue is whether the 1954 redemption certificate issued by the State was also null because the certificate erroneously referred to the 1939 (rather than the 1937) tax sale as its acquisition source, technically leaving unredeemed the 1937 tax sale.
None of the cases cited in McCarthy v. Gonnet or in the dissenting opinion on original hearing in this case involved the factual situation or the issue presented here. Winn Parish Bank v. White Sulphur Lumber Co., 133 La. 282, 62 So. 907 (1913); *891 Board of Commissioners v. Concordia Land & Timber Co., 141 La. 247, 74 So. 921 (1917); Neal v. Pitre, 142 La. 737, 77 So. 582 (1918), and Waterman v. Tidewater Assoc. Oil Co., 213 La. 588, 35 So.2d 225 (1947), the only Supreme Court cases cited in support of following McCarthy v. Gonnet, each involved a tax sale to a third party while the State was holding title to the property under an earlier adjudication. Thus, there was no issue as to the validity of a redemption from the State while the State was holding property after two adjudications to the State, the later adjudication being clearly invalid.
The only cited case with the same factual situation as the present case is McCarthy v. Gonnet, which ignored Johnston v. Nanney, supra, although that Supreme Court decision also involved the identical factual situation. Thus, unless Johnston v. Nanney can be distinguished, McCarthy v. Gonnet must be overruled.
I subscribe to the disposition in the majority opinion on original hearing of the insubstantial (although different) fact that the redemption in Johnston v. Nanney was under Act 47 of 1938 while the present redemption was effected pursuant to R.S. 47:2224. But even if Johnston v. Nanney could be validly distinguished, then no Supreme Court cases involving the present factual situation have been cited, and I would vote to overrule McCarthy v. Gonnet for the following reasons.
When a person whose property has been adjudicated to the State for nonpayment of taxes requests a redemption, it is encumbent upon the State to inform the tax debtor of the correct amount of taxes due for any and all outstanding tax sales and to collect that amount. Furthermore, when the State issues a redemption certificate, that document implicitly covers all existing tax adjudications to the State and is a "full and complete redemption of such lands". R.S. 47:2224. The validity of a redemption should not be affected by the State's error in incorrectly referring in the certificate to an invalid tax sale rather than correctly referring to the valid sale which vested title in the State. Neither should the redemption be affected because amount due to an error by the State of the tax debtor paid less than the proper ficial.
The present case involves another conflict between rule and reason. A technical rule could be established placing the burden on the tax debtor to determine which of several adjudications to the State was the valid one and requiring that he redeem property from the State at the risk that the redemption certificate may refer to an invalid tax sale or contain other inaccuracies, or that the state official may collect less than the proper amount of back taxes. But such a rule has no reasonable basis. Too often courts attempt to formulate rules without regard to reason, and in such cases the cause of justice is the inevitable loser.
The reason and purpose for tax sales is to insure that the State will collect ad valorem taxes. That purpose was fulfilled in the present case when the tax debtor redeemed the property in 1954, although the State perhaps lost two years of taxes due to its own error.[1]
It is definitely not the purpose of tax sales to deprive the landowner of his property when he innocently requests a redemption from the State and in good faith pays the full amount of taxes the State official informs him is due in order to effect the redemption. It would be manifestly unjust in this case to hold that the 1937 tax sale technically was not redeemed, when both the State and the tax debtor intended that all unpaid taxes were being paid and that the tax debtor was being restored to full ownership of the property. And this type of injustice would be compounded by awarding titles to persons who comb the *892 Register's record and prey on such technicalities to "buy" property which has obviously not been forfeited or abandoned.
As to R.S. 9:5661, that prescriptive statute designed to prevent untimely attacks on patents issued by the State implicitly applies only when the State had valid title at the time the patent was issued. Any contrary interpretation would be ridiculous.
GULOTTA, Judge, dissents for the reasons assigned by SAMUEL, J.
STOULIG, Judge (dissenting).
I dissent for the reasons assigned in the dissent of SAMUEL, J.

COURT EN BANC
BOUTALL, Judge (concurring):
In view of the factual situation in this case, I agree with the result of the majority opinion. When there is a second tax adjudication for unpaid taxes while the State has title because of a prior tax adjudication, the second adjudication is obviously null. However, the question here is the validity of the redemption. In this case the original owner sought to redeem the property under the provisions of R.S. 47:2224, and for some reason, only the taxes, etc., due under the second tax adjudication were paid. Despite the prohibition that a redemption certificate could not issue unless all taxes were paid, the Register of the State Land office issued a redemption certificate.
I call attention to the following two paragraphs of LSA-R.S. 47:2224:
"All certificates of redemption issued in the name of the original owner to inure to the benefit of all persons holding rights under such owner to any lots or lands bid in for and adjudicated to the state and issued by the auditor or Register of the State Land Office twelve months or more after the day the act or tax deed to the state was filed for record in the conveyance office are valid and binding upon the state.
"All certificates of redemption of lands issued by the Register of the State Land Office, the title of which lands, at the time the certificate issued, was in the name of the state or in that of any of its political subdivisions, which certificates of redemption are otherwise issued in compliance with the provisions of this section shall, if duly recorded in the office of the recorder of mortgages of the parish wherein said lands are situated, be held and taken as evidence of the full and complete redemption of such lands, and as legal and valid."
I note there are distinctions between the two paragraphs, but conclude that the first fits the facts of this case and the redemption is "valid and binding upon the state." Thereafter the state has no authority to otherwise dispose of the property, and the subsequent sale to appellant is null.
NOTES
[1] Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225; Neal v. Pitre, 142 La. 737, 77 So. 582; Board of Commissioners v. Concordia Land & Timber Co., 141 La. 247, 74 So. 921; Winn Parish Bank v. White Sulphur Lumber Co., 133 La. 282, 62 So. 907; Piper v. Eager, La.App., 269 So.2d 619; Wilkie v. Cox, La.App., 222 So. 2d 85; Pellegrini v. McCarthy, La.App., 175 So.2d 410; McCarthy v. Gonnet, La.App., 163 So.2d 840; Helis' Estate v. Hoth, La. App., 150 So.2d 106; Boagni's Heirs v. Thornton, La.App., 132 So.2d 494; Thomas v. Bomer-Blanks Lumber Co., La.App., 105 So.2d 299; Johnson v. Chapman, La.App., 179 So. 466, reversed on other grounds, 190 La. 1034, 183 So. 285.
[2] Johnston v. Nanney, at 244 La. 965, 155 So.2d 198.
[1] REDMANN, J., does not join in the original assertion that the Register should pay the two years' unpaid taxes.
[1] Arguably, the State reserved the right to also collect these taxes by the language contained in the redemption certificate.