957 So.2d 921 (2007)
William B. BURNS, Plaintiff-Appellant
v.
Frances Gunter HARRIS, Defendant-Appellee.
No. 41,881-CA.
Court of Appeal of Louisiana, Second Circuit.
May 23, 2007.
*922 G. Warren Thornell, Scott C. Sinclair, Shreveport, for Appellant.
Lemle & Kelleher, by David R. Taggart, Sarah A. Kirkpatrick, Shreveport, for Appellee.
Before BROWN, WILLIAMS, STEWART, GASKINS and MOORE, JJ.
STEWART, J.
William B. Burns appeals a judgment allowing Jill Harris Raburn to complete redemption of property sold at a tax sale in 1993. At issue is whether redemption was timely begun in 1996 by Raburn's father, John D. Harris, on behalf of his wife, Francis Gunter Harris, who was the owner of the property prior to the tax sale. Finding that redemption was neither timely nor properly initiated and that Ms. Raburn should not be allowed to complete redemption at this late date, we reverse the trial court's judgment allowing redemption, vacate the awards for reimbursements and rents, and render the judgment set forth in the Appendix to this opinion to quiet and confirm Mr. Burns' tax sale title.

FACTS
The property in dispute is a tract of land located at 2804 Marty Lane in Shreveport, Louisiana.[1] Mrs. Francis Gunter Harris *923 owned the tract as her separate property, but her husband, Mr. John D. Harris, managed the Marty Lane property along with other property the couple owned. Mr. Harris had retired from his job as a fire captain in the mid-1970's after an illness left him with health problems, including significant hearing loss. Thereafter, Mr. Harris became involved in the real estate business. The Marty Lane tract was located next to the Harrises' home and was used as a rental property.
Property taxes on Marty Lane due to the City of Shreveport (the "City") for 1992 totaled $696.17. When the Harrises failed to pay the amount due, the City sold the property at a tax sale on June 9,1993, for $774.95. The purchaser was Providence Trust. The tax sale deed was dated June 16, 1993, and filed on June 29, 1993. The tax sale deed was eventually conveyed or assigned to Lincoln Trust and then to Mr. William B. Burns. As stipulated by the parties, Mr. Burns is the successor-in-title to the Marty Lane tax sale deed and the proper party in these proceedings. Burns had self-directed retirement accounts with Providence and its successor, Lincoln, through which he acquired and held the Marty Lane property.
On August 9, 1999, Mr. Burns filed suit against Mrs. Harris to quiet his tax title and obtain possession of Marty Lane. He obtained a default judgment on October 18, 1999. In response to the order to seize the property, the sheriff of Caddo Parish filed a motion to intervene seeking a new trial partly on the grounds that Burns was not the purchaser named on the tax deed. Thereafter, on April 18, 2000, Mrs. Harris filed a petition to annul the default judgment and an answer opposing Mr. Burns' suit to quiet his tax title. The trial court granted a new trial and recalled the writ of seizure previously ordered with Burns' default judgment.
Because Mrs. Harris's mental competency was impaired by a brain tumor and then a diagnosis of Alzheimer's disease, her daughter, Jill Harris Raburn, was substituted as plaintiff in the suit to annul the tax sale upon her appointment as Mrs. Harris's provisional curatrix. Following Mrs. Harris's death, Raburn was substituted as plaintiff in her capacity as administratrix. Mr. Harris also died while this litigation was underway.
On November 18, 2002, Ms. Raburn amended the petition to annul the tax sale. She alleged that the June 1993 tax sale was null, because no taxes were owed at the time of the sale. Due to erroneous assessments over the years, Mr. Harris had overpaid the taxes, and this had resulted in a credit greater than the amount due for the 1992 property taxes. Raburn also alleged that her father, Mr. Harris, had timely redeemed Marty Lane by payment of a cashier's check in the amount of $3,135.65 to the City of Shreveport on March 28, 1996, but that the City had failed to issue the redemption deed. Raburn also sought damages for loss of rent from the property.
In answer, Mr. Burns denied that Mr. Harris had redeemed the property as alleged by Raburn. Moreover, he filed a reconventional demand seeking all rents attributable to the Marty Lane property from the time of the 1993 filing date of the tax sale deed. Burns again filed a motion seeking a writ of possession, and this was granted on April 14, 2003, subject to the parties' reservation of rights.
The parties agreed to split the trial into two phases. The first phase addressed the nullity and redemption issues. A partial *924 judgment rendered January 4, 2005, denied Raburn's petition to annul the tax sale, but concluded that redemption had been timely initiated by Mr. Harris. The trial court found that Mr. Harris had tried to redeem the property to the best of his ability considering his physical ailments.
The second phase of the trial was to determine the redemption amounts and rents due Mr. Burns. In lieu of trial, the parties submitted a joint stipulation with exhibits and briefs. The trial court signed a written opinion on February 28, 2006, awarding Burns reimbursement of $72,526.50 for parish and city property taxes paid by him plus penalties and interests, $13,208.54 for repairs and maintenance, and rent from May 8, 2003, the date Burns' took possession of the property, through April 30, 2005, subject to a credit for those amounts he retained. A final judgment prepared by counsel for Raburn and objected to by Burns' counsel was signed by the trial court on June 13, 2006.
Burns filed a suspensive appeal seeking review of the trial court's judgment on the redemption issue and challenging various aspects of the amounts awarded by the trial court. In her brief as appellee, Raburn asserted that the trial court erred in not annulling the tax sale and in awarding rents to Burns. Having neither appealed nor answered the appeal, Raburn may not seek reversal or modification of the trial court's judgment. La. C.C.P. art. 2133. Accordingly, we will not entertain the issues raised by Raburn in her brief.

DISCUSSION
La. R.S. 47:2221 states that property sold at a tax sale is redeemable in accordance with La. Const. Art. 7, § 25(B), which provides as follows:
(B) Redemption. (1) The property sold shall be redeemable for three years after the date of recordation of the tax sale, by paying the price given, including costs, five percent penalty thereon, and interest at the rate of one percent per month until redemption.
Redemption requirements are further set forth in La. R.S. 47:2222. The person redeeming the property is required to pay all taxes assessed subsequent to the tax sale with interest of one percent per month until redeemed. La. R.S. 47:2222(A). The payment for taxes is to be made to either the purchaser or the tax collector who made the sale or to his successor in office. La. R.S. 47:2222(C). The tax sale purchaser is also entitled to receive from the owner the value of any improvements made on the real estate. La. R.S. 47:2222(D). Moreover, the tax sale purchaser is entitled to receive from the owner the cost of repairs, rehabilitation, maintenance, removal or demolition as provided in La. R.S. 47:2222.1.
Redemption does not require a showing of an irregularity or defect in the tax or sale process. Harris v. Estate of Fuller, 532 So.2d 1367 (La.1988). It merely requires payment of back taxes due as well as other amounts, as set forth above, that may be proven due. Redemption is subject to a three-year peremptive period that runs from the date of recordation of the tax sale. Id.
Louisiana law favors redemption. Fleckinger v. Smith, 319 So.2d 881 (La. App. 4th Cir.1975), writ denied, 323 So.2d 131 (La.1975); Becnel v. Woodland, 93-446 (La.App. 5th Cir.11/23/93), 628 So.2d 89, writ denied, 93-3108 (La.2/11/94), 634 So.2d 374. Jurisprudence recognizes that equitable considerations may weigh in favor of a tax debtor who attempts to redeem his property prior to expiration of the three-year period. Despite the three-year peremptive period applicable to redemptions *925 and the seemingly clear requirements for effecting redemption, equitable considerations have led some courts to conclude that redemption must be initiated within the three year period, but it need not be completed within that time. S.A. Mortgage Service Co. v. Lemoine, 2001-250 (La.App. 5th Cir.10/17/01), 800 So.2d 1015, writ denied, XXXX-XXXX (La.2/1/02), 807 So.2d 851; Becnel, supra. The following cases demonstrate this principle.
In Fleckinger, supra, certain property had been adjudicated to the state twice for nonpayment of taxes for 1936 and 1938. The defendants, heirs and assigns of the tax debtor, attempted to redeem the property adjudicated for nonpayment of the 1938 taxes and were given a redemption certificate. Three years later, the plaintiffs purchased the property at a tax sale for the still unpaid 1936 taxes. Both parties claimed valid title to the property. The court found that the redemption by the tax debtors' assigns gave them a valid title notwithstanding the fact that the 1936 taxes had not been paid when the redemption certificate was issued. The mistake was on the part of the state, which was required by law to issue a redemption certificate only if all outstanding taxes were paid. The court reasoned it would be unjust to penalize the redeemers because a state official failed to perform his duty or to reward the tax sale purchasers who took advantage of the state's mistake.
In Harris v. Guardian Funds, Inc., 425 So.2d 1322 (La.App. 4th Cir.1983), the court held that a suit to redeem property filed by the plaintiff within the three-year peremptive period was sufficient to make the property "redeemable." Based on plaintiff's counsel's assertion that the parties had been in negotiations for several months before the suit was filed, the court recognized that a tax purchaser might use dilatory tactics to defend his ownership and prevent a tax debtor from redeeming the property. Also, the court found that La. Const. Art. 7, § 25(B) did not mandate the consummation of redemption within the three year period but provided only that the property "shall be redeemable for three years. . . ." Id. at 1325.
In Becnel, supra, the defendant, Woodland, learned just prior to the end of the three-year period that his home had been sold for non-payment of property taxes in August 1988. On August 29, 1991, he went to redeem his property. When he requested the amount due, a town employee told him that the exact figure was not available but that she would get the amount to him as soon as she could. The town still did not provide the amount due the next day. The redemption amount was finally provided by written response on September 6, 1991, after the three-year period had expired. Woodland paid the amount and obtained a tax redemption deed from the town. Thereafter, Becnel, who had purchased the property, filed suit to quiet his tax title. The trial court ruled in Becnel's favor upon finding the redemption deed issued after the three-year period to be null and void. On appeal, the court held that Woodland's attempt to redeem the property in person prior to expiration of the three-year period was sufficient to initiate the redemption process. The basis of the holding was Woodland's timely initiation of the redemption process and his expeditious completion upon receiving the amount due. Though untimely, Woodland's swift completion of redemption upon receipt of the amount due did not impair the long-standing public policy of protecting the certainty of land titles. Equity and fairness weighed in Woodland's favor, because he had no control over the actions of the town's personnel in failing to provide the amount due prior to expiration of the three-year period.
*926 In S.A. Mortgage Service Co. v. Lemoine, supra, the plaintiff-mortgagee purchased the property at a tax sale from the City of Kenner in 1995. In 1997, the property owner, Ms. Rome, went to redeem the property and was told to pay the amount of $89.41, which she paid. However, the amount given to Rome by the City of Kenner was not sufficient to redeem the property. In the lawsuit, the plaintiff's demand to confirm its tax title was denied, and Rome was allowed to complete redemption. The appellate court agreed with the trial court's conclusion that the City's having provided incorrect information would not bar Rome from completing the redemption.
In Mississippi Land Co. v. S & A Properties II, Inc., XXXX-XXXX (La.App. 3d Cir.5/8/02), 817 So.2d 1200, S & A failed to pay city and parish taxes for 1996 on two tracts of land which were then sold at a tax sale. In 1998, a representative of S & A obtained an amount from the parish tax collector's office to redeem the tracts. He then delivered to the parish tax collector two cashier's checks made out to Mississippi Land, the tax sale purchaser. The total of the two checks equaled the amount reported as due by the parish tax collector, namely $112,992.15, and identified the tracts by assessment number. When Mississippi Land filed a petition to quiet its tax title, S & A responded with a no right of action exception on the grounds that it had redeemed the property. The trial court granted the exception and was affirmed on appeal. The appellate court found that S & A had initiated the redemption process within the three-year period by paying an amount sufficient to cover the total city and parish taxes due for 1996, the year for which nonpayment resulted in the tax sale. However, the payment had not been sufficient to also cover the total taxes for 1997, which had apparently also been paid by Mississippi Land. Although Mississippi Land accepted the payment, it did not inform S & A of the deficiency. Instead, Mississippi Land claimed that the payment was for the 1996 and 1997 parish taxes. Even though S & A had sought the amount due from the parish tax collector's office, which presumably would include only the parish taxes, and paid that amount, the appellate court found that Mississippi Land should have attributed the payment to the most onerous debt-the total parish and city taxes for 1996. Relying on equitable considerations, the appellate court found S & A intended to pay its entire tax debt, believed its tender was adequate, and made no imputation of its payment. Thus, the payment should have been imputed by Mississippi Land to the 1996 debt, with any remainder going toward reimbursement for taxes paid by it after the tax sale.
As illustrated by the cases discussed above, equitable considerations favor the tax sale debtor when some mistake or action by the tax collector or tax sale purchaser prevents the tax sale debtor from redeeming his property within the three-year period. Also pertinent to this matter is the important and long-standing public policy of protecting the certainty and marketability of land titles. This policy underlies the three-year peremptive period applicable to redemptions. See Harris v. Estate of Fuller, supra; Fleckinger, supra.
Burns argues that the trial court erred in finding that redemption was timely initiated. He asserts that redemption must be accomplished within the three-year peremptive period and that allowing redemption to be completed thirteen years after recordation of the tax sale deed does not serve the public policy favoring certainty of titles to immovable property. Burns contends that Harris v. Guardian Funds, Inc., supra, Becnel, supra, S.A. Mortgage, *927 supra, and Mississippi Land Co., supra, were incorrectly decided, because the holdings ignore the peremptive nature of the three-year period. He also contends that these cases are distinguishable from the present situation wherein Mr. Harris made all the missteps.
In opposition, Raburn contends that equity favors redemption. She contends that the property had been over-assessed for years prior to the tax sale, that her father tried his best to have the problem corrected, and that he was due a credit over the amount of the taxes for 1992, when the property was sold by the City of Shreveport for nonpayment. Although Raburn raises these points as equitable considerations supporting the trial court's judgment, they are more pertinent to her claim to nullify the tax sale, which is not at issue on appeal, and they bear no relation to what transpired when Mr. Harris allegedly attempted to redeem Marty Lane in March 1996. Raburn further contends that even though her father dealt with the Parish of Caddo instead of the City of Shreveport, timely payment was still received by the City, which then failed to apply it for redemption. Raburn asserts the City's clerical error, as well as the failures of the taxing authorities regarding the assessment problem, stymied her father's efforts over the years to correct the assessment and then redeem the property.
The evidence includes correspondence by Mr. Harris to Lillie Skinner, a Caddo Parish employee, regarding various property issues. The record shows that on January 25, 1996, Mr. Harris wrote to her about four properties. Referring to Marty Lane and another property, he wrote that he no longer received tax notices and asked what to do. Later, he wrote to her saying that he had sent two cashier's checks on March 28, 1996, to redeem two different properties. One of the two properties referred to was Marty Lane. He also wrote that he was under the impression that Mrs. Skinner collected the City's taxes and noted that his cashier's check to the Parish was $2,816.55 above what he believed was owed on the two properties. There is no evidence showing what became of the excess payment to the Parish. The evidence includes a copy of the cashier's check made out to the City of Shreveport Revenue Division for the amount of $3,135.63. The remitter is identified as John Harris. Neither check had information to identify the purpose of the payments or to indicate which properties were the subject of the payments.
On July 23, 1996, Mr. Harris wrote to Mrs. Skinner again about a "breakdown in communications" regarding the cashier's checks he sent in March and the paid receipts he received from her. He informed her that his tenants had received a letter, apparently from Mr. Burns, about an increase in the rent. Letters written by Mr. Harris in 1997 and 1998, to Mr. Burns and then to Mr. Warren, the Caddo Parish Clerk of Court, indicate that Mr. Harris believed he had redeemed Marty Lane in 1996. He noted in the letter to Mr. Warren that Caddo Parish had sent receipts and a redemption deed for the "Risinger property" but not for Marty Lane. He further noted that Mrs. Skinner told him that the City was the "holdup." He claimed that he wrote the City's revenue department but received no reply. There is no evidence in the record of correspondence by Mr. Harris with the City regarding redemption of Marty Lane.
Lillie Skinner had been employed by the Caddo Parish Sheriff's Department in tax collections until she retired in 1997. She testified that Mr. Harris often wrote to her for help. She recalled that he was having problems with several properties and was having difficulties remembering things. *928 Though not part of her job, she looked up properties for him during her lunch hour to see if he had redeemed them and made copies of information for him. However, she did not recall looking up a redemption deed on Marty Lane. Skinner did not specifically recall the two cashier's checks sent by Mr. Harris on March 28, 1996. She testified that she did not work on redemptions and never held herself out to Mr. Harris as a collector of the City's taxes. However, she explained that if the Parish received a check for the City, the check, along with a copy of any letter or other information sent by the payor with it, would be forwarded to the City. Though Skinner testified that Mr. Harris usually included a letter stating which property to redeem when he sent a payment, she did not testify that a letter was included with the cashier's checks of March 28, 1996, or that any letter was forwarded to the City with the cashier's check. There is no evidence of any letter sent with the cashier's checks to explain how to apply the payments. We also note that if Mrs. Skinner did not work on redemptions as she testified, then she would not be likely to have personal knowledge of whether Mr. Harris sent letters with redemption payments.
Cherry Lugo, a revenue supervisor in the City of Shreveport's tax department, testified that some payments to the City are sent to the Parish in error and then forwarded by the Parish to the City. If no instruction as to how to apply the payment is sent with the check, then the City looks in the tax records to figure out where to apply the money. If this cannot be determined, then the payor is called or the check returned. She explained that the City looks up properties in the payor's name; properties that have been sold for nonpayment of taxes would no longer be in the payor's name. Then, the payment is applied to current taxes due, rather than to redemptions for which the amount due has to be calculated to include the interest and costs. Lugo testified that Mr. Harris's cashier's check payable to the City was disbursed for tax payments on different properties he owned, so whoever processed the payment was apparently satisfied that the amount balanced with taxes owed by him. Burns' exhibit number 23 shows that Mr. Harris's payment of $3,135.63 was disbursed among five different properties for 1994 and 1995 city taxes.
This testimony and the evidence of record do not support a finding that Mr. Harris timely initiated redemption of Marty Lane, his wife's separate property, on March 28, 1996, by mailing two cashier's checks to the tax collector for Caddo Parish. Mr. Harris did not send the payment to the correct taxing authority or make clear that the payment or a part thereof was to redeem Marty Lane through the City. Even though Marty Lane had been sold by the City for nonpayment of taxes, Mr. Harris did not contact the City about redemption. Instead, the evidence shows he sought to resolve his complaints through the Parish's assessor's office and sheriff's tax collection division. Neither of these Parish offices were responsible for collecting the City's taxes or processing redemptions of property sold by the City at tax sales. The evidence does not show that Mr. Harris ever contacted the City about redeeming Marty Lane or requested from it a calculation of the cost of redemption. There is no showing that the cashier's check made out to the City was in an amount sufficient to redeem the property. Nothing on the check indicates that payment was on behalf of Mrs. Harris to redeem Marty Lane. Also, there is no evidence that the City or Parish received a letter with the cashier's checks explaining that payment was intended to redeem Marty Lane.
*929 The equitable considerations which favored redemption in other cases are not present here. Mr. Harris did not request the redemption amount and rely on an incorrect amount given by the correct taxing authority as in S.A. Mortgage, supra. He was not stymied in his efforts to timely redeem the property by the taxing authority's delays in providing him the redemption figure as in Becnel, supra. He did not face dilatory tactics by Burns, and he did not file a suit to redeem the property within the three year peremptive period as in Harris v. Guardian Funds, supra. No payment was made to the tax sale purchaser as in Mississippi Land, supra. Also, Mr. Harris's cashier's checks did not identify the tracts to which payment should be applied as in Mississippi Land, and there was no obligation by the City to impute a payment from Mr. Harris to an obligation owed by his wife on her separate property. Finally, there was no mistake on the part of the City in processing the alleged redemption payment as in Fleckinger, supra.
In this instance, unlike the cases above wherein the taxing authority knew it was dealing with a redemption, there is no showing that the City had any knowledge that Mr. Harris's payment was intended to redeem his wife's separate property. Rather, the City received a check from Mr. Harris and applied the payment to taxes for 1994 and 1995 on properties in his name. While a more prudent policy may have been to contact the payor to find out exactly how to apply the payment, the City's failure to do so has not been shown to have been improper and does not support a finding in favor of redemption.
We have compassion for the difficulties experienced by Mr. Harris due to his advanced age and health problems, which he acknowledged in his correspondence. Knowing he had difficulties, he could have sought help with managing his affairs when his health impaired his ability to do so. Instead, he failed to exercise due diligence in his efforts to attempt redemption of Marty Lane by relying on the kindness of Ms. Skinner, a Parish employee, to try to resolve the tax sale and redemption issues he and his wife had with the City. Mr. Harris had years of experience in the real estate business, as reflected in his correspondence and records in evidence, and was not an unsophisticated property owner. The missteps in this matter were primarily his and are not attributable to the City, whose only action was to receive a payment from Mr. Harris that was forwarded by the Parish and to apply it to taxes owed by him for properties in his name.
We find that the facts of this matter are not comparable to the equitable considerations in other cases which have favored redemption. Over ten years have passed with no effort to complete the redemption. Allowing redemption at this late date, particularly when the delay is not attributable to any error or tactic by the tax sale purchaser or the City's taxing authority, would violate the strong policies favoring the protection of land titles and likely subject the tax sale scheme and tax sale titles to greater uncertainty and increased litigation. For these reasons, we find that redemption was not timely initiated and shall not be completed eleven years later.

CONCLUSION
Because we hold that redemption was not timely initiated by Mr. Harris, we reverse the trial court's judgment allowing Ms. Raburn to complete redemption, and we vacate those parts of the judgment awarding reimbursements and rents. As provided in the Appendix to this opinion, judgment is granted in favor of Mr. Burns quieting and confirming his tax title to *930 Marty Lane, and granting relief as sought in his petition. Costs of this appeal are assessed to the appellee.
REVERSED, VACATED, AND RENDERED.
BROWN, C.J., dissents with written reasons.
GASKINS, J., dissents.

APPENDIX

SECOND CIRCUIT

COURT OF APPEAL

WILLIAM B. BURNS

VERSUS

JILL HARRIS RABURN, ADMINISTRATIX FOR THE SUCCESSION OF FRANCES GUNTER HARRIS

NO. 41,881-CA

JUDGMENT
In accordance with the ruling on appeal in No. 41,881-CA of the Louisiana Second Circuit Court of Appeal from the final judgment rendered by the First Judicial District Court, Caddo Parish, Louisiana, in Docket No. 442,650 of the above captioned matter, judgment is rendered in favor of William B. Burns granting his petition to quiet tax title to the property identified as 2804 Marty Lane in Shreveport, Louisiana bearing Geographical Number XXXXXXXXXXXXXXX, and more fully described as follows:
Lots "A" and "B" of a Resubdivision of Lot 13, H.O. Cloud Subdivision, a subdivision of the City of Shreveport, Caddo Parish, Louisiana, as per that plat recorded in Book 600 Page 17 of the Conveyance Records of Caddo Parish, Louisiana, together with all buildings and improvements thereon.
Judgment quieting and confirming William B. Burns' tax title to the above described property is hereby granted. The Caddo Parish Clerk of Court is ordered to cancel and erase all judicial and conventional liens, if any, pertaining to the property. It is also ordered that William B. Burns be placed or continued in possession of the above described property as owner and with no reservation of rights as to the opposing party.
Judgment rendered this 23rd day of May 2007.
BROWN, Chief Judge, dissenting,
In June 1993, property owned by Francis Harris at 2804 Marty Lane in Shreveport was sold by the City in a tax sale to Providence Trust (Mr. Burns). This sale took place for the alleged failure to pay the 1992 property tax assessment of $696. In fact, in 1992 the City owed Francis Harris a credit on the Marty Lane property that exceeded the taxes due that year as a result of a ruling by the Tax Commission. There is no indication in this record that this debt has been paid. This credit or debt represents money delivered to the City by Mrs. Harris to pay the taxes on the property at 2804 Marty Lane. The mistake was on the part of the City. Further, this credit represents payment which the City should have attributed to the most onerous debt. Mississippi Land Co., supra. As such, it would serve even as a redemption of the property.
In addition, within the three-year redemption period, Mr. Harris, an elderly gentleman who was caring for his wife's property because of her incapacity, contacted the Caddo Parish Sheriff/Tax Collector to redeem the property at 2804 Marty Lane. This was explained in correspondence from Mr. Harris to Deputy Skinner. As a result, Mr. Harris paid the past due taxes, penalties, and interest on the Marty Lane property in the form of *931 two cashier's checks one payable to the parish and one to the City. The check payable to the City was sent by the parish and received by the City. Deputy Skinner testified that if the Parish received a check for the City, the check, along with a copy of any letter or other information sent by the payor, would be forwarded to the City. Further, Deputy Skinner testified that whenever Mr. Harris sent a payment he would include a letter identifying which property was to be redeemed. As stated, Mr. Harris did explain in his letters to the parish tax collector that the money was to redeem the Marty Lane property. The City agreed that the cashier's check from Mr. Harris was received but arbitrarily applied to taxes on other property owned by John Harris.
The trial court's findings are reasonable and supported by the record. The equitable considerations and jurisprudence favor redemption. It was the City's mistake and funds were always available to pay the taxes or redeem the property. In addition, within the three-year period, Mr. Harris paid adequate money to the City along with correspondence identifying the property to be redeemed. See Becnel, supra; Harris, supra; Mississippi Land Co., supra; S.A. Mortgage, supra.
I respectfully dissent from the majority.
NOTES
[1] The Marty Lane property is identified in evidentiary records by Geographical No. 181535005000100 and is described as:

Lot A & Lot B of Plat 13, Resub. of Lot 13, 14, 15, & 16, H.O. Cloud Sub.
It is more fully described as:
Lots "A" and "B" of a Resubdivision of Lot 13, H.O. Cloud Subdivision, a subdivision of the City of Shreveport, Caddo Parish, Louisiana, as per that plat recorded in Book 600 Page 17 of the conveyance records of Caddo Parish, Louisiana, together with all buildings and improvements thereon.